SIDEWINDER MARINE, INC., Plaintiff,

v.

Bruce NESCHER, an individual, and Sleekcraft Boats, a sole proprietorship, Defendants.

No. C–70–2054 RFP.

United States District Court, N. D. California.

Dec. 30, 1976.

George C. Limbach, John P. Sutton, C. Douglas McDonald, Jr., Limbach, Limbach & Sutton, San Francisco, Cal., for plaintiff Sidewinder Marine, Inc.

Charles E. Townsend, Jr., Marvin W. Murray, Townsend & Townsend, San Francisco, Cal., for defendants Bruce Nescher and Sleekcraft Boats.

## MEMORANDUM AND ORDER

PECKHAM, Chief Judge.

This controversy began in November of 1970 when plaintiff Sidewinder Marine, Inc. ("Sidewinder") filed suit against Sleekcraft Boats and Bruce Nescher (owner of Sleekcraft Boats) for infringement of Patent No. 219,118, a patent that Sidewinder held on the design of certain power boats. The patent relates only to the appearance of the boat, and does not involve any claims relating to its function or internal design. The parties settled this action, and pursuant to that settlement, this court entered a judgment on December 29, 1970, that permanently enjoined defendants from manufacturing any boats that fell within plaintiff's patent.

On September 2, 1971, plaintiff filed a motion to cite defendants for contempt, alleging that after the issuance of the permanent injunction defendants had continued to manufacture a nearly identical boat. The parties also settled this dispute, and on January 29, 1973, the motion was dismissed pursuant to their stipulation. In this second settlement, Sidewinder agreed to license defendants, and defendants agreed to undertake the typical duties of a licensee, reporting each month the number and type of patented boats that defendants manufactured, and paying royalties on those boats. Also, pursuant to the agreement the permanent injunction of December 29, 1970, was amended to prohibit defendants from manufacturing the patented boats "without license by plaintiff, provided, however, that this injunction shall be dissolved if U.S. Design Patent No. 219,118 is held to be invalid by a final judgment or decree by any court having jurisdiction of the matter from which no appeal can be taken."

On June 16, 1975, plaintiff filed a second motion to cite defendants for contempt, alleging that since November of 1973 defendants had neither reported the number of patented boats that they had manufactured, nor paid any royalties. On October 17, 1975, this court denied the motion, reasoning that where there is an outstanding license agreement that purports to authorize defendant's actions, plaintiff's proper remedy for violation of the agreement is an action on the contract and not a motion for contempt.

On July 30, 1976, plaintiff filed the present motion for specific performance of the settlement agreement, again alleging that since November of 1973 defendants have made no reports and paid no royalties. Plaintiff seeks an award of $11,425 in back royalties, $2,165 in interest on those royalties, and any expenses and attorney's fees involved in collecting those amounts.

## I. JURISDICTION

Defendants contend that this court is without jurisdiction to order specific performance of the license agreement because the dispute over performance of the license agreement is solely a matter of state con-

tract law, and because there is no federal question presently before the court to which the instant motion could be attached under "ancillary jurisdiction."

Plaintiff relies primarily on *Aro Corp. v. Allied Witan Company*, 531 F.2d 1368 (6th Cir. 1976), a recent decision of the Sixth Circuit on facts very similar to the instant dispute. *Aro* involved a patent infringement suit, which the parties settled. Pursuant to the settlement, the court dismissed the action without prejudice, and the parties executed a license agreement. The defendants almost immediately refused to honor the license agreement, and did not make payment of the agreed upon royalties. Within six months of the dismissal of the infringement action, plaintiff returned to the district court and filed two motions: a motion to vacate the dismissal pursuant to Rule 60 of the Federal Rules of Civil Procedure, and a motion for specific performance of the license agreement. Defendants in *Aro* challenged the district court's jurisdiction on the same basis that defendants contest jurisdiction in the present action, arguing that the issue is purely contractual and should be resolved in the state courts. The district court held that it had jurisdiction, vacated the dismissal, and granted summary relief for defendant's non-performance of the agreement. The Sixth Circuit upheld the district court's determinations:

> It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them. . . .

> Acting within its sound discretion a court may relieve a party from a final judgment when "a reason justifying relief from the operation of the judgment" exists. Rule 60(b)(6). Hence the court below was clearly correct in vacating its order of dismissal. Allied's attempted repudiation of the agreement on which the dismissal rested constituted full justification therefor. The court below had not only the inherent power but, when required in the interests of justice, the duty to enforce the agreement which had settled the dispute pending before it.

. . . Allied, however, argues that the enforcement of the agreement should be determined by the state courts because it is only a license contract between nondiverse parties. The argument must fail. . . . [A] settlement agreement is more than a patent license even when, as here, the former rests on and is carried out by means of the latter. To permit the absence of diversity to divest the court of jurisdiction after settlement, when it could not have done so prior to settlement, would be to exalt form over substance and to render settlement in such cases a trap for the unwary. The license cannot be separated from the purpose of its birth.

531 F.2d at 1371 (6th Cir. 1976).

Defendants attempt to distinguish the *Aro* decision by arguing that plaintiff in this action has failed to file a motion under Rule 60, and that the time to file such a motion has already lapsed. However, the specific provision involved in the *Aro* case, Rule 60(b)(6), has no time limit, and plaintiff has subsequently filed a motion under this provision.

The jurisdictional analysis in *Aro* should be followed in the present case. If the federal courts are powerless to enforce settlement agreements, defensive gamesmanship could undercut the value of settlements in resolving disputes. This point is particularly telling in the context of patent infringement actions, where the pre-settlement jurisdiction of the federal courts is exclusive. 28 U.S.C.A. § 1338(a). It would be totally inappropriate to allow defendants to strip federal courts of exclusive jurisdiction over a lawsuit merely by entering a settlement in bad faith.

## II. INDISPENSABLE PARTIES

On September 25, 1975, Sidewinder and Saul Davidson, an individual who acted as trustee of Sidewinder's patent rights for the benefit of certain of Sidewinder's creditors, sold the patents at issue in this suit to Sidewinder of Wisconsin, Inc., an unrelated and separate corporation. Sidewinder retained only certain contractual rights and

rights to recovery: the right to recover for any infringements that took place before the sale, the right to prosecute or to settle certain pending infringement actions, and the right to recover for any past or future infringement by certain specific infringers and licensees, including the defendants in this action. Sidewinder of Wisconsin did not expressly agree to be bound by any determination of patent validity in these actions.

Defendants argue that Sidewinder of Wisconsin is an indispensable party, and seek dismissal of the present action for failure to join that company in the litigation. Defendants have directed no arguments to the standards of Rule 19(b) of the Federal Rules of Civil Procedure; they merely cite *Independent Wireless Telegraph Company v. Radio Corporation of America*, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1926), for the proposition that the owner of a patent is always an indispensable party to an infringement action. Certainly that has been the traditional approach of the courts and of the Ninth Circuit. *Waterman v. Mackenzie*, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891); *Rawlings v. National Molasses Co.*, 394 F.2d 645 (9th Cir. 1968).

■ Although the instant controversy does not technically constitute an action for infringement, it appears that the validity of the patent will be a central issue. In these circumstances, Sidewinder of Wisconsin should be joined in the action. Clearly Sidewinder of Wisconsin falls within the terms of Rule 19(a) and constitutes a "person to be joined if feasible." However, it is unnecessary to consider dismissal of the action pursuant to Rule 19(b). Under the terms of the contract by which the patent was transferred, plaintiff has the contractual right to join Sidewinder of Wisconsin in this litigation. Furthermore, at the hearing of October 18, 1976, plaintiff represented that it would exercise these rights at the request of the court.

### III. COLLATERAL ESTOPPEL

Sometime prior to 1973, Sidewinder had filed an infringement action in the District of Colorado against Starbuck Kustom Boats and Products, Inc., a Colorado corporation not related to any of the parties in this action. The Colorado litigation involved the same patent at issue here. On August 18, 1976, Judge Matsch decided that action for defendant Starbuck and held, in a persuasive and well reasoned opinion, that Sidewinder's patents were "obvious" and invalid. Sidewinder has appealed that judgment to the Tenth Circuit.

Defendants in this litigation seek to attack the validity of the patent and to apply the Colorado judgment collaterally against Sidewinder. Sidewinder contends that the previous settlement in this action renders the validity of the patent "res judicata" and precludes defendants from challenging the validity of the patent as a defense to Sidewinder's action on the settlement agreement.

■ Without question a previous judgment of patent invalidity may be invoked collaterally against a patent holder who had an adequate opportunity to litigate the issue in the previous case. *Blonder Tongue v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Furthermore, in *Lear v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), the Supreme Court held that a patent licensee is not estopped from contesting patent validity by the fact that he has accepted a licensee from the patent holder. Plaintiff seeks to distinguish the instant controversy from *Lear v. Adkins* because the contract at issue was entered in settlement of litigation. However, the Ninth Circuit has determined that where the parties enter a licensing agreement in settlement of litigation, the licensee may nonetheless subsequently challenge patent validity, even where the licensee has specifically agreed not to do so:

We think the rationale of *Lear* requires us to hold that the covenant . . . in the settlement agreement . . . not to contest the validity of [the] patent, is void on its face and unenforceable. It is in just as direct conflict with the "strong federal policy" referred to repeatedly in

*Lear,* as was the estoppel doctrine and the specific contractual provisions struck down in that decision.

. . . . .

We think it unimportant that in our case the covenant is part of a settlement agreement rather than of a typical patent licensing agreement. . . . If the recognized policy favoring settlement of disputes might be hindered by our holding on this question, that policy, in our opinion, must give way to the policy favoring free competition in ideas not meriting patent protection.

*Massillon-Cleveland-Akron S. Co. v. Golden State Adv. Co.,* 444 F.2d 425, 427 (9th Cir. 1971).

The only feature that might distinguish the present situation from the *Massillon-Cleveland-Akron* case is the fact that the parties here also entered a consent judgment that enjoined the defendants from infringing the patent but did not specifically address patent validity. In other circuits, entry of a consent judgment has been held to preclude subsequent attacks on patent validity. See *Schlegel Manufacturing Co. v. USM Corp.,* 525 F.2d 775 (6th Cir. 1975); *Broadview Chemical Corporation v. Loctite Company,* 474 F.2d 1391 (2nd Cir. 1973); and *United States ex rel. Shell Oil Co. v. Barco Corporation,* 430 F.2d 998 (8th Cir. 1970). The Seventh Circuit has determined that even after entry of a consent judgment a defendant may attack the validity of a patent. *Kraly v. National Distillers and Chemical Corporation,* 502 F.2d 1366 (7th Cir. 1974). However, this question need not be answered in the present litigation. Pursuant to its own terms, the judgment of December 29, 1970, will dissolve if the Tenth Circuit affirms the decision of the district court for the District of Colorado. At that point, no basis would remain for distinguishing the instant action from the *Massillon-Cleveland-Akron* decision.

Thus, the result in the appeal of the Colorado litigation could be completely dispositive of the issues in this litigation.*

■ Accordingly, any further proceedings in this action will be held in abeyance pending the decision of the Tenth Circuit in *Sidewinder Marine, Inc. v. Starbuck Kustom Boats and Products,* 418 F.Supp. 224 (D.Colo.1976).

---

* There might appear to be some question whether the Colorado judgment could collaterally estop Sidewinder of Wisconsin, who pursuant to this opinion must be joined in the present action. However, Judge Matsch states in his opinion that pursuant to orders entered in Sidewinder's bankruptcy proceedings in the Northern District of California, Sidewinder acted in the Colorado litigation "for and on behalf of all who could conceivably have any right, title or interest in the patent, the claim and the cause of action . . . [and] all such persons are, accordingly, bound by the result herein. . . . " Sidewinder of Wisconsin may wish to challenge that determination later in this litigation; but for purposes of this opinion, it may be assumed that collateral estoppel will apply to all plaintiffs.